ELECTRONICALLY FILED
DOC #:
DATE FILED:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JASON BURKE,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. 16-CV-6520 (KMK) (PED)

ORDER

KENNETH M. KARAS, District Judge:

Jason Burke ("Plaintiff") brings this action against the Commissioner of Social Security ("Defendant" or the "Commissioner"), pursuant to 42 U.S.C. § 405(g), challenging the decision of an administrative law judge (the "ALJ") to deny Plaintiff's application for benefits on the ground that Plaintiff was not disabled within the meaning of the Social Security Act (the "SSA"), 42 U.S.C. §§ 423, *et seq.* Plaintiff and Defendant cross-moved for judgment on the pleadings. (Dkt. Nos. 10, 21.) The Court referred the case to Magistrate Judge Paul E. Davison ("Judge Davison") pursuant to 28 U.S.C. § 636(b)(1)(A). (*See* Dkt. No. 8.) On August 21, 2017, Judge Davison issued a Report and Recommendation (the "R&R") recommending that the Court grant Plaintiff's Motion for Judgment on the Pleadings, deny Defendant's Cross-Motion for Judgment on the Pleadings, and remand the case for further administrative proceedings. (Dkt. No. 23.) Defendant filed an objection to the R&R on September 19, 2017, (Dkt. No. 26), and Plaintiff filed a response to the objection on October 2, 2017, (Dkt. No. 27). For the reasons discussed below, the Court adopts the R&R and remands the case to the Commissioner for further administrative proceedings consistent with this Opinion pursuant to 42 U.S.C. § 405(g).

I. Discussion

A. Standard of Review

1. Review of a Report and Recommendation

A district court reviewing a report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1), *see also Bradley v. Comm'r of Soc. Sec.*, No. 12-CV-7300, 2015 WL 1069307, at *1 (S.D.N.Y. Mar. 11, 2015) (same). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), parties may submit objections to the magistrate judge's report and recommendation. The objections must be "specific" and "written," and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).

When a party submits timely objections to a report and recommendation, as the Defendants have here, the district court reviews de novo the portions of the report and recommendation to which the party objected. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Bradley*, 2015 WL 1069307, at *1. The district court "may adopt those portions of the . . . report [and recommendation] to which no 'specific written objection' is made, so long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Eisenberg v. New Eng. Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 72(b)(2)); *see also Alverio v. Colvin*, No. 13-CV-4722, 2015 WL 1062411, at *1 (S.D.N.Y. Mar. 9, 2015) ("When the parties make no objections to the [r]eport [and recommendation], the [c]ourt may adopt [it] if there is no clear error on the face of the record." (internal quotation marks omitted)).

2

## 2. Review of a Social Security Claim

In reviewing a Social Security claim, the reviewing court does not determine for itself whether the plaintiff was disabled, and therefore entitled to Social Security benefits. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("[I]t is not our function to determine de novo whether [the] plaintiff is disabled." (italics, alteration, and internal quotation marks omitted)); *Riordan v. Barnhart*, No. 06-CV-4773, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a de novo determination of whether or not the claimant is disabled . . . ." (italics omitted); *Van Dien v. Barnhart*, No. 04-CV-7259, 2006 WL 785281, at *8 (S.D.N.Y. Mar. 24, 2006) ("The court is not permitted to determine whether the claimant is disabled de novo." (italics omitted)). Instead, the reviewing court considers merely "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *amended on reh'g in part by* 416 F.3d 101 (2d Cir. 2005). Accordingly, a court may overturn an ALJ's determination only if it was "based upon legal error" or "not supported by substantial evidence." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotation marks omitted). "'Substantial evidence' is 'more than a mere scintilla'[;] . . . [i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In considering whether substantial evidence supports the ALJ's decision, the reviewing court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted).

In determining whether a claimant is entitled to disability insurance benefits, the ALJ follows a five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him [or her] disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not 'listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1179–80 (2d Cir. 1998)); *see also* 20 C.F.R. § 404.1520(a)(4)(i)–(v). The claimant bears the burden of proof for the first four steps. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). If, however, the claimant proves that the impairment prevents him or her from performing the claimant's past work, the burden shifts to the Commissioner at the fifth step. *See id.* There, the Commissioner must prove "that there is other gainful work in the national economy that [the claimant] could perform." *Kamerling v. Massanari*, 295 F.3d 206, 210 (2d Cir. 2002). If the ALJ determines that "significant numbers of jobs exist in the national economy that the claimant can perform," *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014), the ALJ must determine that the individual is not disabled, *see* 20 C.F.R. § 404.1520(a)(4)(v).

B. Analysis

The Court adopts the extensive recitation of facts set forth by Judge Davison in the R&R, (R&R 2–35), and assumes the Parties' familiarity with it. The Court will repeat only those facts relevant to the consideration of Defendant's objection.

The Commissioner objects to Judge Davison's recommendation that the Commissioner's motion be denied and that the case be remanded for further proceedings because the ALJ failed to properly develop the record by failing to re-contact Dr. Rybakov after finding apparent inconsistences between his June 18, 2015 medical source statement and his treatment notes. (*See* Comm'r's Obj's to R&R ("Obj's") 1–2 (Dkt. No. 26); R&R 36–38.) The Commissioner argues that the ALJ properly developed the record, and that Judge Davison erroneously ruled that the "ALJ was required to re-contact Plaintiff's treating psychiatrist before finding the psychiatrist's opinion was inconsistent with other evidence in the record." (Obj's 1–2.)

The ALJ has an affirmative obligation to develop the record. *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). For example, the ALJ must "seek additional evidence or clarification where the documentation from a claimant's treating physician, psychologist, or other medical source is inadequate to determine whether the claimant is disabled." *Velez v. Colvin*, No. 14-CV-3084, 2017 WL 1831103, at *15 (S.D.N.Y. May 5, 2017) (alterations and internal quotation omitted). "This duty to develop the record is particularly important where an applicant alleges he is suffering from a mental illnesses, due to the difficulty in determining whether these individuals will be able to adapt to the demands or stress of the workplace." *Hidalgo v. Colvin*, No. 12-CV-9009, 2014 WL 2884018, at *4 (S.D.N.Y, June 25, 2014) (internal quotation marks omitted). "[I]n some cases, the nature of the record may render re-contacting the treating physician the best, if not the only, way to address gaps or inconsistencies

5

in the record, such that it is incumbent upon the ALJ to do so." *Gabrielsen v. Colvin*, No. 12-CV-5694, 2015 WL 4597548, at *6 (S.D.N.Y. July 30, 2015); *see also Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013) ("To the extent [the] record is unclear, the Commissioner has an affirmative duty to fill any gaps in the administrative record before rejecting a treating physician's diagnosis." (internal quotation marks omitted)); *Burgess*, 537 F.3d at 129 ("In light of the ALJ's duty to affirmatively develop the administrative record, an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." (internal quotation marks omitted)); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ("First, even if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from the [treating physician] sua sponte." (italics omitted)).

The Commissioner attempts to distinguish the facts here from *Gabrielsen*, arguing that "this is not a case where the circumstances required the ALJ to re-contact the treating physician to clarify his opinion." (Obj's 2; *see also id.* 5–7) The Court agrees with Judge Davison that, in fact, this is such a case. The circumstances here are nearly identical to those in *Gabrielsen*, where the ALJ "determined that he could not afford 'great weight' to two reports [the treating physician] submitted in connection with this matter." 2015 WL 4597548, at *7. As the *Gabrielsen* Court explained, "[t]he ALJ determined that [the treating physician's] assessment of [the p]laintiff's marked occupational and mental limitations, . . . was inconsistent with [the treating physician's] own treatment notes and the objective evidence contained in the record and [the p]laintiff's own statements . . . regarding his mental functioning." *Id.* (internal quotation marks omitted).

Here, as in *Gabrielsen*, the ALJ determined that he could give "partial, but limited, weight" to Dr. Rybakov's medical opinion dated June 18, 2015 outlining Plaintiff's serious

limitations. (SSA Administrative Record ALJ Hearing Decision ("ALJ Hearing Decision") at 26 (Dkt. No. 9).) This was because "treatment notes do not support the limitations stated, other than [Plaintiff's] self-serving statements about getting along with others." (*Id.*) The ALJ further commented that there were "no documented limitations in the record to this severe degree," and "no evidence in the record that [Plaintiff] has ever experienced any episodes of decompensation to suggest he would miss 4 days of work per month." (*Id.*) The ALJ noted that Plaintiff's own statements were contrary to the treating physicians conclusions. (*Id.*) The ALJ also noted that "interestingly . . . with all of these severe restrictions, Dr. Rybakov finds [Plaintiff] capable of managing benefits on his own." (*Id.*) But, as Judge Davison explained, the record here contained additional gaps because it did not include treatment notes from the therapists working with Dr. Rybakov, who regularly treated Plaintiff as St. Marks Place Institute. (SSA Administrative Record Medical Records Ex. 7, at 571–97 (Dkt. No. 9); R&R 38 n.21.)

*Gabrielsen's* conclusion is on point: "While the ALJ certainly is entitled to assess the treating physician's opinion to determine how much weight to afford it, at least some of the deficiencies that the ALJ points out . . . are precisely the types of inconsistencies that Dr. [Rybakov] would best be able to resolve." 2015 WL 4597548, at *7 (citation omitted). Specifically, as relevant here, the ALJ identified apparent inconsistencies between the treatment notes and the limitations; inconsistencies between the conclusion of severe restrictions and the conclusion the Plaintiff was able to manage benefits; the lack of treatment notes to support the conclusion Plaintiff would be absent from work four days a month; the lack of documented limitations in the record; and the gap in the record of the treatment notes from St. Marks Place Institute. (ALJ Hearing Decision 26.) Dr. Rybakov would best be able to resolve these inconsistencies. As in *Gabrielsen*, "the ALJ has made no finding, nor has the Commissioner

7

made any argument, about why Dr. [Rybakov] could not have resolved at least some of the inconsistencies at issue, the only circumstance in which the [Social Security] regulations explicitly provide that re-contacting the treating physician is inappropriate." 2015 WL 4597548, at *7.

It is true that, "[t]he courts leave it to the finder of fact to resolve any conflicts there may be in the medical testimony, and the ALJ need not reconcile every conflicting shred of medical testimony." *Id.* (internal quotation marks omitted). "Nonetheless, because many of the inconsistencies at issue here likely can be explained by Dr. [Rybakov], and given the heightened duty to develop the record in [c]ases of mental impairment discussed above, the Court finds that the ALJ had an obligation to re-contact Dr. [Rybakov] to seek clarifying information. *Id.* (citing inter alia *Cancel v. Colvin*, No. 14-CV-2034, 2015 WL 865479, at *4–5 (S.D.N.Y. Mar. 2, 2015) (remanding case where the ALJ failed to develop the record because the ALJ did not request additional records or information from the claimant's three psychiatrists in light of unsubstantiated conclusions and "perceived inconsistencies")); *see also Reynoso v. Colvin*, No. 13-CV-5587, 2015 WL 1378902, at *12 (S.D.N.Y. Mar. 26, 2015) (remanding when ALJ determined "[n]o explanation or detailed analysis was provided to support the extreme limitations mentioned in this report" and the "conclusions were not supported by the record," but failed to develop record by re-contacting treating physicians); *Ashley v. Comm'r of Soc. Sec.*, No. 14-CV-0040, 2014 WL 7409594, at *4 (N.D.N.Y. Dec. 30, 2014) (holding that "[w]hile the regulations afford an ALJ broad discretion in determining and resolving inconsistencies," the ALJ erred in failing to "contact[ ] the doctor for clarification" of apparent inconsistency between treating physician's conclusion and treatment records); *Munoz v. Colvin*, No. 13-CV-1269, 2014 WL 4449788, at *13 (S.D.N.Y. Sept. 10, 2014) ("In th[e Second] Circuit . . . where . . . the ALJ

8

finds a treating physician's opinion lacking in support, he or she must seek additional information from the treating physician sua sponte before rejecting his or her opinion.") (italics omitted); *Ryszetnyk v. Astrue*, No. 12-CV-2431, 2014 WL 2986700, at *11 (E.D.N.Y. July 1, 2014) ("If the ALJ was concerned that [the treating physician's] functional capacity assessment contradicted his treatment notes or any other part of the record, she should have requested additional information from him in order to fill any gap or deficiency in the record."); *but see Thompson v. Colvin*, No. 12-CV-7024, 2014 WL 7392889, at *3 (S.D.N.Y. Dec. 29, 2014) (holding that ALJ had no obligation to re-contact treating physician because her assessment was also inconsistent with the other record evidence, including plaintiff's testimony); *Vanterpool v. Colvin*, No. 12-CV-8789, 2014 WL 1979925, at *17 (S.D.N.Y. May 15, 2014) (holding that mere inconsistency in the record did not require an ALJ to re-contact the treating physician for clarification, where there was no obvious gap in the record); *Barry v. Colvin*, No. 12-CV-1124, 2014 WL 1219191, at *3 (W.D.N.Y. Mar. 24, 2014) (holding that where no doctor had placed a limit on claimant's physical abilities, ALJ was not obligated to re-contact a physician if the ALJ already possessed a complete medical history) *aff'd*, 606 F.App'x 621 (2d Cir. 2015). Accordingly, the Court concludes that Judge Davison was correct in finding that the ALJ failed to adequately develop the record and remanding the case.

## II. Conclusion

For the foregoing reasons, the Court adopts Judge Davison's Report and Recommendation. The case is therefore remanded for further administrative proceedings consistent with this opinion pursuant to 42 U.S.C. § 405(g).

The Clerk is to terminate the pending motions, (Dkt. No. 10, 21), and close this case.

SO ORDERED.

DATED: December 5, 2017
White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE